UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:11CR00103 JAR |
| | ) |
| COREY TURNER, SR., | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
MOTION FOR RETROACTIVE APPLICATION OF SENTENCING GUIDELINES
AMENDMENT 782 AND SENTENCE REDUCTION**

COMES NOW the United States of America, by and through Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Tiffany G. Becker, Assistant United States Attorney for said District, and states as follows:

**Position**

The Government opposes defendant's motion. While defendant is eligible for a sentencing reduction, for the reasons set forth below, the Court should exercise its substantial discretion and **deny** the requested reduction in this case.

**Analysis & Authority**

**I.   Authority to Reduce a Sentence.**

In Amendment 782 to the United States Sentencing Guidelines, effective November 1, 2014, the Sentencing Commission lowered the penalties for most drug offenses by reducing most offense levels on the 2D1.1 Drug Quantity Table by 2 levels, and making related adjustments.

Under Section 1B1.10:  "In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (d) below, the court **may** reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2).  As required by 18 U.S.C. § 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement."  § 1B1.10(a)(1) (emphasis added).

## II.  Procedure for Sentencing Reduction

### A.  Eligibility

A defendant is eligible for a sentencing reduction if Amendment 782 is applicable to the defendant and lowers the defendant's previously calculated guideline range under Section 2D1.1 and/or 2D1.11, and if the defendant did not previously receive a sentence at or below the bottom of the now-amended range (unless a motion for substantial assistance was filed).  Even if the defendant is eligible, a district court has discretion to deny a reduction.  Further, a proceeding under Section 3582(c)(2) is not a full resentencing proceeding, and does not permit reconsideration of other sentencing determinations not altered by the guideline amendment.  § 1B1.10(a)(3).

In *Dillon v. United States*, 560 U.S. 817 (2010), the Supreme Court addressed the process for application of a retroactive guideline amendment, emphasizing that Section 1B1.10 is binding.  The Court declared:  "Any reduction must be consistent with applicable policy statements issued by the Sentencing Commission."  *Id.* at 821.  The Court required district courts to follow a two-step approach:

> At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized.  Specifically, § 1B1.10(b)(1) requires the court to begin by "determin[ing] the amended guideline

range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing. "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." *Ibid.*

Consistent with the limited nature of § 3582(c)(2) proceedings, § 1B1.10(b)(2) also confines the extent of the reduction authorized. Courts generally may "not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range" produced by the substitution. § 1B1.10(b)(2)(A). . . .

At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, **in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.**

*Dillon*, 560 U.S. at 827 (emphasis added).

In this case, the analysis described in step one reveals that defendant is eligible for a reduction.

### B.  Determining the Appropriateness of a Reduction

Turning to step two of the inquiry, the Court should exercise its authority to deny a sentencing reduction in this case. Section 1B1.10 directs that "the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining . . . whether a reduction in the defendant's term of imprisonment is warranted." *Id.* app. note 1(B)(i); *see also* U.S.S.G. § 1B1.10 background ("The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right.").

Subject to the limits set forth in Section 1B1.10(b), the Court may consider all pertinent information in applying the Section 3553(a) factors and determining whether and by how much to reduce the defendant's sentence. In particular, the Court must consider public safety

considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative.  Application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment."  Application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." The application note explains that these factors are relevant in determining whether and by how much to reduce a sentence, but only within the limits set forth in Section 1B1.10(b).

Thus, "[t]he grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced. *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998).[1]  A district court has "substantial discretion" in deciding whether to reduce a sentence; even "[a]n agreement between the government and the defendant that a sentence reduction is appropriate does not bind the judge; nor is the judge's consideration of the question limited to the factors the parties regard as relevant." *United States v. Young*, 555 F.3d 611, 614 (7th Cir. 2009).

Accordingly, many courts have denied sentencing reductions in situations where guideline amendments lowered the sentencing ranges. *See, e.g., United States v. Styer*, 573 F.3d 151, 154-55 (3d Cir. 2009) (denial based on nature of original criminal conduct); *United States v. Melton*, 2008 WL 1787045 (W.D.N.C. 2008) (denial based on nature of offense); *United States v. Craig*, 2008 WL 1775263 (W.D.N.C. 2008) (denial based on the facts of the case); *United*

---

[1] In *Vautier*, the Eleventh Circuit held that the district court did not abuse its discretion in denying a Section 3582(c)(2) motion for reduction of sentence, upon considering the 3553(a) factors.  The district court denied the motion, stating that "in light of this Court's expressed concern of the defendant's demonstrated violence and factoring all of the other considerations that went into the establishment of this defendant's sentence, the same sentence would have been imposed under the current amended guidelines." *Vautier*, 144 F.3d at 759.

4

*States v. Reynolds*, 2008 WL 2367254 (S.D. W. Va. 2008) (motion denied because defendant's criminal conduct was "nothing short of egregious"), *aff'd*, 309 F. App'x 703 (4th Cir. 2009) (unpublished); *see also United States v. Marion*, 293 F. App'x 731 (11th Cir. 2008) (unpublished) (district court's consideration of the defendant's criminal history was proper, when denying a reduction motion, even though this was the same factor it considered at his original sentencing hearing).

### C.  Defendant Should Not Receive a Sentence Reduction

The United States Probation Office has correctly calculated that Corey E. Turner, Sr.'s amended advisory guideline range is 360 months to life.  For the reasons set forth below, the nature of the offense, his criminal history, his leadership role and particularly the need to avoid unwarranted sentencing disparities all militate in favor of denying the reduction.

Corey Turner Sr.'s conviction was the result of a lengthy and intensive investigation into an organization conducting a large-scale distribution of crack cocaine in Southeast Missouri. Turner, along with two others, was convicted at trial of conspiracy to possess with intent to distribute over five kilograms of cocaine as well as some cocaine distribution counts.

The conspiracy began in March 2009, when Corey Turner Sr. was serving time in the Federal Residential Release Center (RRC), a half-way house in Neelyville, Missouri, following his term of imprisonment for Distribution of Cocaine Base. Two of Turner' cousins, Joe Lenzie Turner and Mario Baker, were there at the same time, and while there, Joe Lenzi Turner met two other individuals who became sources of supply for cocaine once he was released.

After the cousin's release from the halfway house, they began to obtain cocaine, cook it into crack and distribute it to people in the Sikeston area. Ultimately, the conspiracy would involve at least 17 conspirators, many of whom were related to the Turner family.

One of those conspirators who testified for the government at trial, Jerriereneika Dorsey, indicated that she had been involved with Corey Turner in distributing crack cocaine from around October of 2010 until her arrest on August 30, 2011. During that time period, Dorsey was getting crack for resale herself from Corey Turner sometimes two to three times a day. Dorsey had seen Corey Turner cook crack at his residence and had seen him distribute crack cocaine to others "hundreds of times." She testified that Turner was making crack sales "all day, every day."

Corey Turner was sentenced on July 11, 2013. The government prepared a detailed, cross-referenced exhibit that summarized the evidence from the trial and demonstrated that conservatively, the conspiracy entailed over 16 kilograms of cocaine. The Court characterized the government's evidence concerning the scope of the conspiracy as being "overwhelming," and found that the evidence "clearly proved that the conspiracy involved well in excess of the 8.4 kilograms that is set out in the presentence report."

The Court determined that Corey Turner's appropriate total offense level was off the charts at a level 44, and his criminal history category was V, which yielded an advisory guidelines range of life on count I and 360 months on counts III, V and VII (based on a total offense level of 43).

Turner's total offense level included a two-level enhancement for obstructing justice, and a four-level enhancement for being a leader or organizer of a criminal activity with five or more participants.

Turner showed no remorse at his sentencing, telling the Court that:

> "...And I just want to make this a matter of record that I didn't come to court today to beg for mercy...But one thing I want this court to know is I'm aware of the unlawful acts that was committed by these investigative agencies to put us in here." (Sentencing Transcript pp. 55-56)

6

Noting Corey Turner's lack of remorse, prior convictions for Armed Robbery, weapons possession and his leadership role in the offense, the District Court sentenced him to life incarceration on Count I and concurrent terms of 360 months on each of Counts III, V and VII. The record clearly reflects the Court's reasoning behind the decision to sentence Turner to a term of life imprisonment.

> "...when the Court considers the trial testimony, the evidence in this case was overwhelming. It demonstrated that there was an extensive, long pervasive conspiracy to distribute drugs. The effect of which is hard to calculate, but I'm certain that it had an incredibly negative effect in the Sikeston area, Cape Girardeau, the entire community....The Court does find and believe based on the trial testimony, the length and scope of this conspiracy, the lack of any consideration toward the harm that you're causing, when I give consideration to your background and history, your prior conviction for armed robbery, possession of a weapon, you were under a criminal justice system sentence at the time this conspiracy all started, you were a vital part and organizer and leader of this conspiracy." (Sentencing Transcript pp. 57-58)

The Court also specifically addressed the sentencing factors it is required to consider under Title 18, United States Code Section 3553(a).

> "I do believe that a sentence of life on count 1 and 360 months on each of counts 3, 5 and 7 to run concurrent with the ten years of supervised release is sufficient but not more than necessary to meet the statutory sentencing objectives. It will properly hold the Defendant accountable, provide adequate deterrence, protect the community and achieve parity with sentences of similarly situated individuals." (Sentencing Transcript p. 58)

The reference to parity with the sentences of similarly situated individuals is crucial here. Co-defendants Donald Turner and Antonio Turner were both sentenced to life imprisonment. It would result in an unwarranted sentencing disparity to sentence Corey Turner, Sr. to less than life imprisonment where he was the leader and therefore most culpable in this offense. Accordingly, this Court should deny the motion to reduce Corey Turner, Sr.'s sentence and persist in the life sentence which is within the amended guideline range.

WHEREFORE, while defendant may be eligible for a sentence reduction pursuant to the retroactive application of Amendment 782, this Court should exercise its substantial discretion to **deny** the requested reduction in this case.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

*/s/ Tiffany G. Becker*
TIFFANY G. BECKER #46314 MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri  63102
(314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2015, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Tiffany G. Becker*
TIFFANY G. BECKER #46314 MO
Assistant United States Attorney